Yeates J.
The defence made against the plaintiff’s recovery, under the facts set forth in this special verdict, is grounded upon a supposed illegal exercise of the powers of the Supreme Court in banc, and also that James Oldden having been discharged by his bankruptcy and certificate of conformity from his liability to Bond, the defendant might avail himself thereof in this suit as fully as Oldden might have done.
^as keen contended in the first instance, that the Supreme Court had no power to direct the entry of the amicable action on the 18th December 1802, whereby the remedy against the present defendant was facilitated; and that Oldden so far from agreeing thereto, opposed the same with all his strength.
It must be observed, that Bond brought a suit against Oldden to March term 1800, upon which the defendant’s appearance was accepted. Subsequent thereto on the 15th April following, the agreement between Bond and Oldden was made; whereby it was stipulated that on Bond’s giving good security to pay certain notes to the amount of 19,300 *255 dollars, and to indemnify Oldden against other outstanding notes to the amount of 7244 dollars and sixty-one cents, certain acts should be done by Oldden and Bond respectively. And it was agreed, that the suit brought by Bond against Oldden shoull be discontinued without costs; and in lieu thereof an amicable action should be entered of the same term, and Oldden or his counsel should sign an agreement to try the action the next September or December term if possible; and at the time of entering said action, Oldden should give Bond satisfactory security for payment of any sum that he might recover, without delay. The jury have found, that Bond did and performed all and every covenant, engagement and matter in pais on his part to be done and performed, according to his agreement. On the 28th of the same month of April, the now defendant entered into an agreement with the plaintiff, whereby he covenanted that in case Bond should recover any sum of money in an amicable action intended to be brought by Bond against Oldden in pursuance of the agreement of the 15th April, Oldden should pay the amount of the judgment to be obtained in the said action on demand, and for the payment thereof Gardiner bound himself to Bond.
The amicable action however was not entered immediately, but the former action proceeded, and on the 1st January 1801, Oldden pleaded non assumpsit and payment with leave, &c.; and on the 29th August following Oldden became a bankrupt and obtained a certificate of conformity. Upon the 27th November 1802 Oldden pleaded his bankruptcy and conformity; and on the 6th December following *a motion was made on the part of the plaintiff to strike off the plea of bankruptcy, upon such proper terms as the court should think reasonable, the action being brought to ascertain the quantum which Gardiner might be liable for; and on the 18th of the same month, another motion was made to strike off that suit, and enter an amicable action, which was granted upon argument, and the action was entered nunc pro tunc by order of the court. The jury find this action to have been regularly entered in pursuance of the aforesaid agreement of the 15th April, and that in the same action an agreement was filed of record, whereby Bond bound himself not to take out execution on any judgment he might obtain, against the goods and chattels or the person of the said Oldden, inasmuch as the said action was only to ascertain the amount, if any, for which Gardiner was or might be liable by reason of his covenant of the 28th April 1800.
*256 Courts are instituted for the advancement of justice ; but it is admitted that they cannot exceed their powers, and that they are bound to administer the laws according to known and established rules. To attain the important objects of their institution, they are often called on to exercise certain inherent equitable powers essentially necessary to the public weal, but which are defined by no positive law. The courts of common law' in England are in the possession and exercise of such powers. An adversary suit was depending in this Court by Bond against Oldden. They afterwards made an arrangement respecting it, and by an instrument under their hands and seals, mutually agreed that the suit already brought should be discontinued, and an amicable action substituted in lieu thereof as of the same term. Over suitors in court in actions depending, it will not be denied, that the courts exercise a control, preventing them from eluding their fair engagements made either by themselves or their counsel. Why then should not this Court enforce the agreement of the 15th April, so far as it respected the action before brought? What injury or injustice did their interposition effect? The members of this Court unanimously granted the motion made by the plaintiff’s counsel on the 16th December 1802, after full argument, and I see no ground to alter the opinion which I then formed. It is freely conceded, that neither a court of Ieiw or equity can vary or change the *s°lemn contracts of parties ; but the decision in this instance, came in aid of the spirit of the agreement, and conformed to the words contained therein ; and if eventually it operated as a medium of proof against G-ardiner, this arose from his own deliberate act.
The amicable action being entered, Oldden appeared by his counsel, pleaded to issue, took a proviso rule, proceeded to trial, consented to the discharge of the jury after being sworn, and to the appointment of referees, and filed exceptions to their report, which were afterwards fully argued. I do not assert that Oldden agreed to the entry of the amicable action at tbe time; but I infer from his subsequent acts, that combined together, they sanction what the court had done, and are equivalent to his consent in the first instance.
It has likewise been contended, that the court had no authority to strike out the plea of bankruptcy and conformity entered in the amicable action. This introduces the question how far the defendant Gardiner could avail himself of the bankruptcy of Oldden? The thirty-fourth section of the act of Congress of 4th April 1800 directs, that a bankrupt who conforms to the provisions of the law, “shall be discharged *257 from all debts by him or her due or owing at the time he or she became bankrupt, and all which were or might have been proved under the commission:” but a proviso follows at the end of the section, “that no such discharge of a bankrupt shall release or discharge any person who was a partner with such bankrupt, at the time he or she became bankrupt, or who was then jointly held or bound with su-ch bankrupt for the same debt or debts, from which such bankrupt was discharged as aforesaid.” This proviso substantially agrees with the words of the British statute of 10 Ann. c. 15 s. 3 ; and the general rule laid down in the books, is said to be, that the allowance of the bankrupt’s certificate does not discharge his sureties. Cook’s Bkt. Law, 580 (3d ed.),—1 Atky. 84; 2 Stra, 1043.
When the plea of bankruptcy was struck out, Bond filed an agreement on record, that if he should obtain judgment against Oldden, no execution should be levied on his property, nor any ca. sa. be issued against his person; aud expressly declared that the proceedings were carried on to ^ascertain the amount, if any, for which Gardiner was liable. Oldden therefore could not possibly be affected by the result; and as to Gardiner, it is found by the special verdict, that he had notice of the suit pending against Oldden, and at various times of the cause being marked for trial, and consequently had it in his power to make defence in the action in which he was so materially interested. Upon the trial Oldden offered to give in evidence his bankruptcy and certificate upon the general issue, which was overruled under the special circumstances of the case. But if his bankruptcy and certificate operated in point of law as a discharge of the liability of Gardiner, those facts are set out in the special verdict upon which the Court are called to deliver their opinions in this suit. In my idea Gardiner is not thereby freed from his responsibility. The act of congress professes to discharge the bankrupt from such debts, as might be proved against him under the commission, but by express words, the discharge does not extend to his surety. To assign that effect to it, would therefore not only be in opposition to the act of congress, but the plain intention of the contracting parties; for it has been truly stated by the plaintiff’s counsel, that their true meaning in stipulating that mutual securities should be given, was to guard against the insolvency of either Bond or Oldden.
As to the orders of court directing the entry of the amicable action and striking out the plea of bankruptcy, I hold, that while the judgment given in that suit remains in full *258 force and un reversed, we cannot collaterally in a new action brought against a different defendant, declare it to be illegal and of no effect. Omnia prcesumuntur esse rite acta in curia.
It is further set out in the special verdict, that on the day of rendering the judgment, notice thereof was regularly given to Gardiner, and a demand for the payment of the amount was regularly made on him by Bond, which was refused by him: And likewise on the 14th November in the same year, a demand of payment of the amount of the judgment was regularly made on Oldden, which was refused also, and that shortly afterwards the present action was commenced.
On the whole matter I am clearly of opinion, that the '^present defendant has violated his contract both in terms and spirit, and that judgment be rendered for the plaintiff for the damages assessed by the jury.
Brackenridge J.
I would have taken it that the terms of the agreement of the 15th April 1800 would have been answered by a proceeding under the action as it was originally entered ; for the word amicable is not of substance, the meaning being an action to be entered. Whether amicable or adverse could not be material, and was used only as that was the form of action that was then contemplated; but ex majori cautela and to avoid exceptions, it was discontinued, and the term amicable entered in the form of the new action, to which entry of the action it is alleged that the defendant in that action named did not consent. But the court, on hearing, so ordered it, which under the circumstances of the case they conceived themselves to have the power to do. This I take it cannot now be controverted. But if it could, the appearance of the defendant to the new action is a rati habitio, and amounts to an assent originally given.
The plea of bankruptcy was sustainable under the act of congress so as to arrest any process that would affect the person of the defendant or his creditors, but not further, these being the objects of the act; and these objects being secured by the stipulation or docket entry that the judgment that might be obtained should not affect as a lien, or ground process of execution, against the personal property of the defendant; the object being only in the nature of an issue joined, to ascertain what sum if any had been due and owing from the defendant before his bankruptcy, and which the defendant in the present action, had agreed to pay. The act of congress, neither on principle or terms, interposed any difficulty in the way of this. There could be nothing in the way *259 of such stipulation, or docket entry, but that in consequence the defendant in the present action could not have the benefit of the lien under the judgment obtained, the equity of which would result to him on his paying the amount to Bond. But this seems not provided for by the agreement of the 15th. For the word recover, cannot in the technical sense be taken to mean satisfaction of the judgment. For in that case the defendant’s engagement to pay, would be to pay what in that case would already have been paid. The word. *recover is coupled with the word judgment, and refers to it; the judgment that he shall recover, are the terms. There is a recovery of a judgment, the suit having gone on for this purpose, and for nothing else.
From the earnestness with which the counsel on the part of the defendant would seem to have pressed the defence, and the disposition to avail themselves of all defect of form which technical subtlety might warrant, I would infer that there is an impression in their minds, from something in the case that does not appear, and cannot judicially be brought into view, that there was some unfairness on the part of the plaintiff in drawing the defendant into the agreement. But this not appearing to the Court, cannot be considered, or warrant a defence that does not spring from the merits of the case; and of this nature I would take the objection to the entry of the action, plea of bankruptcy, &c., to be.
Judgment for plaintiff.